JERNER v. IMPERIAL FURNITURE CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—OCCUPA-
TIONAL DISEASE—ACCIDENT—EVIDENCE.

> Where the evidence as to the cause of claimant's injury
> left it open to inference that it might have been caused by
> infection from a dyeing fluid, in the nature of an occupa-
> tional disease, or, if caused by an accident, in the nature
> of an abrasion of the skin, through which the germ en-
> tered, there was no evidence as to when or how the acci-
> dent occurred, in either event an award of compensation
> under the workmen's compensation law was unauthor-
> ized, since occupational diseases are not covered by the
> act, and in the second event there was no evidence of
> an accident on which to base the finding of the industrial
> accident board.

Certiorari to Industrial Accident Board. Submitted
January 10, 1918. (Docket No. 38.) Decided March
27, 1918.

Charles Jerner presented his claim for compensa-
tion against the Imperial Furniture Company, for in-
juries received in defendant's employ. From an order
awarding compensation, defendant and the Furniture
Mutual Insurance Company, insurer, bring certiorari.
Reversed.

*Francis D. Campau,* for appellants.

*Charles G. Turner,* for appellee.

BROOKE, J. On August 31, 1916, claimant entered
into the employ of respondent Imperial Furniture
Company, and continued in such employment to Sep-
tember 19, 1916, a period of 20 days. He was em-
ployed as a stainer of mahogany furniture. In per-
forming his duties it was necessary for him to com-

pletely immerse the article to be stained in a tank containing about 50 gallons of water, in which there was held in solution 1½ pounds of carbonate or bicarbonate of soda and 6 pounds of aniline dye. After removing the article from the tank, it was claimant's duty to brush it off with a brush. During the operation it was necessary for claimant to get his hands into the staining liquid. No difficulty was experienced by claimant until the 11th day of September, on which day he testified, "the flesh started to open up on my hands."

The record discloses that gloves were frequently used by the operatives in the staining department, but that none were furnished by the respondent to claimant. Referring to his condition on the 11th, claimant said:

"I didn't feel it hurt very much on the 11th day, but could see a little red spot on there after I washed the hand.

"Q. You don't know where you got the little red spot?

"A. No, sir, I do not."

Plaintiff's hand grew worse although he continued to work until the 19th, when he was compelled by his condition to stop.

Dr. Sevensma, who saw claimant in September, 1916, testified that at that time claimant's hand was infected by a germ (staphylococcus). He said that he did not associate the infection with aniline dye. In anwer to a question by a member of the arbitration committee, he said:

"Q. Would you say the infection came from his employment?

"A. Would I say that?

"Q. Would you?

"A. Why, it might, in the course of his work.

"Q. Is it one of the dangers of the work down there?

"A. Not necessarily, I imagine, in the staining

room, unless they scratch their hand accidentally on the wood work.

"*Q.* You say he did have a scratch there?

"*A.* He must have opened the skin somehow to let in the infection.

"*Q.* Infection coming from employment there?

"*A.* Might have been and might have gotten it home.

"*Q.* When you first saw him, only his little finger was affected.

"*A.* Well, the whole hand was involved, but as I remember it, his little finger was where it started, was the most swollen of them all."

This witness further testified that it would be possible for aniline dye to have the effect to crack the hand or chap it. Another witness, a fellow workman, testified that he saw claimant's hand four or five days before he quit work and that, "there was a little scratch or something."

The arbitration committee, before whom the claim was heard, unanimously denied compensation. On appeal to the industrial accident board, they unanimously reversed the finding of the committee on arbitration and allowed compensation at the rate of $6.25 per week during the period of disability.

We are of opinion that the award must be set aside. If the injury to claimant occurred by reason of the character of his work, he is precluded from recovery because the act does not provide compensation for those suffering injury from occupational diseases. The testimony seems to indicate that those engaged in dyeing furniture with mahogany stain frequently suffer from sore hands. If, however, claimant's injury is due, not to the general character of his occupation, but to some accidental occurrence, then the record is entirely barren of any evidence of an accident. If claimant suffered a scratch or abrasion through which the germ entered, the record is silent as to when and how he sustained the accident. The case is clearly

distinguishable from *Dove* v. *Leather Co.*, 198 Mich. 132, and *Blaess* v. *Dolph*, 195 Mich. 137. In the first of these cases it was held that there was testimony tending to support the conclusion of the board that the claimant inhaled the infecting germs in the course of his employment, whereas in the case at bar the only testimony upon the subject is that the germ infection from which the claimant suffered cannot be associated with aniline dye. In the latter case the germ (streptococcus) which killed claimant's decedent, was clearly traced to a source within his employment.

The award of the industrial accident board is reversed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.