LÓPEZ, PLAINTIFF AND APPELLEE, *v.* WORKMEN'S RELIEF COMMISSION, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in an Action for Indemnity.

No. 2236.—Decided July 22, 1921.

WORKMEN — LABOR ACCIDENT — EVIDENCE. — Although the court found that the death of the workman supervened in consequence of poisoning produced by the absorption of lead salts handled by him in the course of his employment, yet when it is not shown how long he was engaged in such work and there is no direct testimony regarding the condition of his health on the day of the supposed accident, nor any suggestion of any extraordinary incident occurring on that or another day which could have caused the absorption of an abnormal quantity of poison, nor anything to indicate that the poison was or could have been absorbed on that day or within a definite period prior thereto in an amount sufficient to cause death, the facts that the workman was a robust man who showed no symptoms of chronic plumbism and that his death occurred a few hours after the first symptoms of the poisoning, are not sufficient to warrant the conclusion that his death was necessarily the result of a labor accident.

ID.—ID.—CONSTRUCTION OF LAW.—In drafting section 4 of the Workmen's Compensation Act the Legislature had no intention to enumerate all cases with-

out the scope of the Act, but only to specify the circumstances under which a plaintiff should not be allowed to recover, notwithstanding possible proof of facts which in the absence of such restriction would constitute injury resulting from an accident.

The facts are stated in the opinion.

*Mr. J. Soto Rivera* for the appellee.

*The Attorney General,* the *Acting Attorney General* and *Mr. A. Arroyo* for the appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The facts as found and the conclusions reached by the trial judge in so far as necessary to a decision of the questions involved herein are stated by him as follows:

"This case came to this court on appeal in accordance with the provisions of section 9 of the Workmen's Accident Compensation Act and, following the legal proceedings, the case was tried, both parties having appeared by their respective attorneys. In consequence of the evidence introduced at the trial, the court finds that it has been satisfactorily shown that Miguel Alenda, the husband of the plaintiff, on the third of January, 1919, was employed as a foreman of the press filters of the mills for the manufacture of sugar, the property of the Fajardo Sugar Company, which is a corporation duly authorized to carry on business in this Island and registered under the Workmen's Compensation Act in force in Porto Rico on the aforesaid date; that the said Miguel Alenda, who was a young, strong and healthy man, was by reason of his daily work as an employee of the Fajardo Sugar Company for cleaning the aforesaid filters, under the duty of using a substance composed of salts of lead called 'plombagina' and on the aforesaid day and in the course of his employment the said Miguel Alenda suddenly felt an acute pain in his stomach as well as nausea and his condition made it necessary to call the doctors of the aforesaid corporation who ordered the immediate removal of Miguel Alenda to the Presbyterian Hospital at Santurce, where he died some hours later in consequence of poisoning produced by the absorption of salts of lead, or 'plombagina' with which the said Miguel Alenda was working; that the plaintiff and her daughter are the sole and universal heirs of Miguel Alenda, depending solely and exclusively for their living on the sum of $10.50 that the said Miguel Alenda earned weekly. In view of the aforesaid facts the court is of the opinion that judgment must

be rendered for the plaintiff. The Workmen's Compensation Committee, who appeared in the case by the district attorney, has alleged in support of a refusal of the compensation claimed the fact that this is a case which does not partake of the nature of an accident occurring while the employee was at work, and to this effect stress is laid on the certificate of death issued by Dr. Vizcarrondo wherein it is stated that Miguel Alenda died in consequence of *saturnismo crónico,* a statement that is not supported by the evidence introduced at the trial and from which it appears that Alenda was always a healthy and strong man; that he never felt any of the symptons which, according to the testimony of Dr. Vizcarrondo, he would necessarily have felt if Alenda had suffered of *saturnismo crónico.* But even admitting that the cause of the death of Miguel Alenda was gradual and slow poisoning by absorption for several years of the poisonous substance handled by him incident to the work which he performed for the benefit of his principal, the court is of the opinion that the theory of the defendant and of the district attorney could not be successfully maintained, inasmuch as in the light of the jurisprudence the word 'accident' when used in insurance policies should be liberally construed according to the common and popular usage of the term, covering therefore those cases which occur and which could not have been foreseen or avoided by the person or persons affected thereby. *Richards* v. *Travelers Ins. Co.,* 89 Cal. 170. I Cyc. 249. It is likewise upheld by jurisprudence that an illness contracted by an employee whose hands, in the course of his employment, are in contact with infected rags or poisonous substances, is an accident which gives a right of action to recover the amount of the policy. 1 Words and Phrases, 34–36. And it is not jurisprudence alone which sustains the points of view of the court, but the provisions of the Workmen's Compensation Act itself, which provides in section 2 that the law in question is applicable to laborers injured, disabled or killed by accidents caused by the employment and occurring while engaged in any public works that may be performed by administration. In any event the poisoning of Alenda, sudden or chronic, occurred in the course of his employment and was the result of the use of a poisonous substance, the nature and condition of which was unknown to him. That such is the interpretation that should be given to the law is shown by the test of section 4, where the cases are enumerated when the laborer shall not be entitled to any compensation. Section 4 reads thus:

" 'Accidents occurring under the following circumstances are not labor accidents and, therefore, shall not entitle the laborer or his heirs under this Act, to compensation:

" '1. When the laborer attempts to commit a crime, or to injure his employer or any other person, or when he voluntarly causes himself injury.

" '2. When the laborer is intoxicated, provide such intoxication is the cause of the accident. ˉ

" 'When the injury is caused to the laborer by the criminal act of a third person.

" 'When gross negligence of the laborer is the sole cause of the injury.'

"Therefore the case of Alenda not falling within those which the Legislature has not deemed accidents occurring in the course of the employment, and inasmuch as Alenda himself under the said law could not have assumed the risk, we have necessarily to conclude that the death of Miguel Alenda was due to a labor accident occurring in the course of his employment, and that his heirs have a perfect right to the compensation allowed by the law."

One of the errors assigned and the only one which we need consider is that the judgment rendered for plaintiff is contrary to law.

"Although the term 'personal injury,' as used in the Massachusetts statute, has been held broad enough to include occupational diseases (see annotation in L. R. A. 1917 D, 104, note 31), such diseases are not included in the term 'accident' or 'personal injury' as used in the statutes of other states.

"Thus, an employee engaged as a stainer of mahogany furniture can not recover for compensation, because of a disease of the hand from coming in contact with the paint, since the Michigan Act does not provide compensation for occupational diseases. Jermer v. Imperial Furniture Co. (1918), Mich., 166 N. W. 943. The court said: 'If the injury to claimant occurred by reason of the character of his work, he is precluded from recovery, because the act does not provide compensation for those suffering injury from occupational diseases. The testimony seems to indicate that those engaged in dyeing furniture with mahogany stain frequently suffer with sore hands. If, however, claimant's injury is due not to the general character of his occupation, but to some accidental occurrence, then the record

is entirely barren of any evidence of an accident. If claimant suffered a scratch or abrasion, through which the germ entered, the record is silent as to when and how he sustained the accident.' '' Annotation to *Re Maggelet,* L. R. A. 1918 F, page 872.

''It is submitted that one of the strongest arguments against including industrial diseases among the injuries covered by the Compensation Act, not expressly providing therefor, is that all of the American acts are more or less modeled after the English acts, and when the original act of that country had been held not to apply to such diseases, and before any of the American statutes were passed, it was amended to cover them, not by the omission of the word 'accident,' but by the addition of a provision that a disablement resulting from an industrial disease 'shall be treated as the happening of the accident.' There were also added elaborate provisions covering the award of compensation in such cases.'' *Linnane* v. *Aetna Brewing Company,* L. R. A. 1917 D, page 106.

''Various provisions of the statute, particularly the clause requiring notice of the accident to be given to the employer within a specified time, have been held to indicate the legislative intention that there must be a time and place and circumstance to which the injury can be referred. Elke v. Hart-Dyke (1910) 2 K. B. (Eng.) 677, 80 L. J. K. B. N. S. 90, 103 L. R. N. S. 174, 26 Times L. R. 613, 3 B. W. C. C. 482, 3 N. C. C. A. 230; Alloa Coal Co. v. Drylie (1913) W. C. & Ins. Rep. (Eng.) 213, (1913) S. C. 549, 6 B. W. C. C. 398, 50 Scot. L. R. 350, 4 N. C. C. A. 899; Petschett v. Preis (1915) 31 Times L. R. (Eng.) 289, 106 L. T. N. S. 741, 76 J. P. 251, 28 Times L. R. 344, (1912) W. N. 105, 5 B. W. C. C. 259.'' Note to *Adams* v. *Acme White Lead & C. Works,* L. R. A. 1916 A, page 290.

The findings of the court below are final, but what are the findings in the instant case? The trial judge says that Alenda was a healthy, robust young man who showed no symptoms of chronic lead poisoning and whose death occurred within a few hours after the first indications of distress; but he also says that death resulted from lead poisoning due to the absorption of the salts of lead habitually used in his daily work. How long Alenda had been engaged in this work does not appear, although there is an intimation

that the employment extended over a period of several years. There is no specific statement as to the actual condition of the man's health on January 3 when the symptoms developed and no suggestion whatever of any unusual incident on that day or on any other date that could have caused the absorption of an abnormal amount of the poison, nor, save the possible inference from the finding as to previous physical condition and the rapidity with which death ensued, is there any intimation that the posion was or could have been absorbed upon that particular day or within any definite period previous thereto in quantity sufficient to produce death. There is nothing to show that an acute attack, without previous sypmtoms of poisoning, as distinguished from chronic illness, might not be equally the result of gradual absorption extending over a considerable period of time. The finding, therefore, contained nothing which, fairly construed, can be said distinctly to negative the theory of a gradual process incompatible with the idea of any fixed date upon which the alleged accident could have occurred, and something of this sort, to say the least, would be required to take the case definitely out of the general class to which it belongs.

The inconsistency, if any, between the finding that death was due to the, ordinarily if not necessarily, gradual process of absorption of lead contained in the material habitually used by Alenda in his daily work, and the unqualified statement as to previous good health and freedom from all symptoms of chronic lead poisoning, and the more important matter of the failure to make more definite findings, may have been due to the fact that the mind of the court below was concentrated upon the question as to whether or not the case, from any point of view, could be considered as not within the contemplation of the law. And from the statement by the trial judge, taken as a whole, it does seem reasonably clear that he thought the question as to whether or not death resulted from an occupational disease was a matter

of minor importance. But, however this may be, the find-ings, as already pointed out, neither fixed the date on which the so-called accident occurred, nor indicated that the absorp-tion found to be the cause of death did or could have occurred at or within any fixed time of which notice might be given as required by the law.

It will suffice to add that in section 4 of the law the Legis-lature did not intend to enumerate all the cases not within the purview of the enactment, but only to specify the cir-cumstance in which a plaintiff should not be permitted to recover, notwithstanding possible proof of facts which, in the absence of such restriction, would constitute an injury by accident. Similar provisions are quite common in legislation of this character and are usually embodied in the section con-taining the reference to injuries by accident as a limitation upon the scope of that phrase. Such clauses do not deal with others that could not in any event be regarded as an injury by accident and the principle of *expressio unius est exclusio alterius* invoked by the court below can have no proper ap-plication.

The judgment appealed from must be

*Reversed.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.