LÓPEZ, DEMANDANTE Y APELADA, *v.* COMISIÓN DE INDEMNIZACIONES A OBREROS, DEMANDADA Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre indemnización por accidentes del trabajo.

No. 2236.—Resuelto en julio 22, 1921.

'ACCIDENTES DEL TRABAJO—CAUSA DE ACCIÓN—PRUEBA INSUFICIENTE.—Cuando si bien la corte declaró probado que la muerte del obrero sobrevino a consecuencia del envenenamiento producido por la absorción de sales de plomo manejadas en el curso de su empleo, no consta, sin embargo, desde cuándo estaba él ocupado en tal labor ni hay declaración específica en cuanto a la condición actual de su salud el día del supuesto accidente y ninguna sugestión de algún incidente extraordinario ocurrido ese u otro día que hubiera podido causar la absorción de una..cantidad anormal de veneno, ni hay nada que indique que el veneno fué o pudo ser absorbido ese día o dentro de un período definido anterior al mismo en cantidad suficiente para producir la muerte; el hecho de que él obrero fuera un hombre robusto que no mostraba síntomas de saturnismo crónico y el de que la muerte tuvo lugar pocas horas después de los primeros síntomas del envenenamiento, no son bastantes para concluir que la muerte se debió necesariamente a un accidente del trabajo.

ID.—ID.—INTERPRETACIÓN DEL ARTÍCULO 4 DE LA LEY SOBRE ACCIDENTES DEL TRABAJO.—Al redactar el artículo 4 de la Ley sobre indemnizaciones por accidentes del trabajo la Legislatura no tuvo la intención de enumerar todos los casos que no estén comprendidos en el alcance de la ley sino solamente especificar las circunstancias en las cuales no debe permitirse a un demandante que pueda recobrar no obstante la posible prueba de los hechos que en ausencia de tal restricción constituirían un perjuicio ocasionado por un accidente.

Los hechos están expresados en la opinión.

Abogado de la apelada: *Sr. J. Soto Rivera.*

Abogados de la apelante: *Hon. Attorney General, R. Rivera Zayas, Acting Attorney General,* y *A. Arroyo.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Los hechos como fueron declarados probados y las conclusiones a que llegó el juez sentenciador en tanto son necesarios para la resolución de las cuestiones aquí envueltas han sido expresados por dicho juez en la siguiente forma:

"De acuerdo con las disposiciones de la sección 9 de la Ley de indemnizaciones por accidentes del trabajo, llegó este caso a esta corte en grado de apelación: y con observancia de los trámites legales se celebró la vista del mismo con la comparecencia de ambas partes asistidas de sus respectivos abogados. Como resultado de la evidencia producida en el acto de la vista, la corte entiende satisfactoriamente probado, que Miguel Alenda, esposo de la demandante, era en tres de enero de mil novecientos diecinueve, empleado como capataz de los filtros de prensa de los molinos para la fabricación de azúcar, propiedad de la Fajardo Sugar Company, que es una corporación debidamente autorizada para efectuar negocios en esta Isla, y está inscrita de acuerdo con la ley de indemnizaciones por accidentes del trabajo vigente en Puerto Rico en la fecha mencionada; que dicho Miguel Alenda, que era un hombre joven, robusto y saludable, tenía que usar en las faenas a que habitualmente se dedicaba, como empleado de The Fajardo Sugar Company, y para la limpieza de los filtros mencionados, una substancia compuesta de sales de plomo, denominada 'plombagina'; y en el día de referencia y en el curso de su empleo, Miguel Alenda, sintió súbitamente fuertes dolores en el vientre, náuseas y vómitos, requiriendo su estado la intervención de los médicos de la corporación aludida, quienes ordenaron el inmediato traslado de Miguel Alenda, al Hospital Presbiteriano de Santurce, donde falleció horas después a consecuencia de un envenenamiento producido por la absorción de las sales de plomo, o 'plombagina,' con que el expresado Miguel Alenda trabajaba; que la demandante y su hija son las únicas y universales herederas de Miguel Alenda, quienes dependían única y exclusivamente para su subsistencia del jornal de $10.50, que el expresado Miguel Alenda devengaba semanalmente. De acuerdo con los hechos relatados, entiende esta corte que procede dictar una sentencia a favor de la parte deman-

dante. La Comisión de Indemnizaciones a Obreros, que compareció en autos por medio del fiscal del distrito, ha sostenido como razón legal para negar la indemnización reclamada, la circunstancia de ser éste un caso que no tiene el carácter de accidente del trabajo, y a este respecto se hace hincapié en el certificado de defunción expedido por el Dr. Vizcarrondo, y en el cual se dice que Miguel Alenda falleció a consecuencia de *saturnismo crónico*, aseveración ésta que no está sostenida por la prueba presentada, en el curso del juicio, y de la cual se desprende que Alenda fué siempre un hombre saludable, fuerte y robusto, que no experimentó nunca los síntomas, que de acuerdo con el testimonio del propio Dr. Vizcarrondo, hubiera necesariamente sentido, si el expresado Alenda hubiera sufrido el *saturnismo crónico*. Pero aún dando por supuesto que la causa de la muerte de Miguel Alenda, hubiera sido el envenenamiento lento y pausado, por la absor-ción durante varios años de la substancia venenosa con que tenía que bregar, como incidente de la labor por él realizada, para beneficio de su patrono, entiende esta corte que no podría alegarse con éxito la teoría de la parte demandada y del fiscal del distrito, toda vez que a la luz de la jurisprudencia, la palabra 'accidente,' cuando se usa en pólizas de seguro, debe recibir una interpretación amplia y liberal, de acuerdo con la acepción común y popular del vocablo, incluyendo por tanto aquellos casos que tienen lugar sin que puedan ser previstos o evitados por la persona o personas a quienes afectan. *Richards* v. *Travelers Ins. Co.*, 89 Cal. 170. 1 Cyc. 249. La jurisprudencia sostiene asimismo, que una enfermedad contraída por un empleado que en el curso de sus deberes tiene su manos en contacto con trapos infectados o sustancias venenosas, constituye un accidente que da lugar al establecimiento de una acción para recobrar el importe de una póliza. 1 Words and Phrases, 34-36. Y no es solamente la jurisprudencia la que sostiene los puntos de vista de la corte, sino los términos de la propia Ley de indemnizaciones por accidentes del trabajo que en su sección segunda dispone que el estatuto en cuestión será aplicable a los obreros lesionados o que se inutilicen, o pierdan la vida por accidentes que provengan del empleo y ocurran durante el curso de éste. De un modo o de otro, el envenamiento de Miguel Alenda, súbito o crónico, ocurrió durante el curso de su empleo, y fué producido por el uso de la substancia tóxica, cuya naturaleza y condición él desconocía. Y que tal es la interpretación que debe recibir la ley, se desprende del contenido del artículo 4, en el que se enumeran los casos en los cuales no procederá conceder la indemnización. Dicho artículo 4 dice así:

" 'No son accidentes del trabajo y no darán, por consiguiente, derecho a indemnización al obrero o a sus herederos, de acuerdo con esta ley, los que ocurran en las siguientes circunstancias:

" '1. Al tratar el obrero de cometer un delito o de lesionar a su patrono o a cualquiera otra persona, o cuando voluntariamente se causare la lesión.

" '2. Estando el obrero embriagado, siempre que la embriaguez fuera la causa del accidente.

" '3. Cuando la lesión le haya sido causada al obrero por el acto criminal de una tercera persona.

" '4. Cuando la imprudencia temeraria del obrero haya sido la única causa de la lesión.'

"Así, pues, no estando el caso de Alenda comprendido dentro de aquéllos que el legislador ha considerado que no son accidentes del trabajo, y siendo así, que él, de acuerdo con la misma ley, no podía asumir el riesgo, hay que concluir necesariamente que la muerte de Miguel Alenda se debió a un accidente del trabajo ocurrido en el curso de su empleo, y que sus herederos tienen un legítimo derecho a recibir la compensación que la ley les acuerda."

Uno de los errores alegados y el único que necesitamos considerar es que la sentencia dictada a favor de la demandante es contraria a derecho:

"Aunque las palabras 'perjuicio personal' como se emplean en el estatuto de Massachusetts se ha declarado que son lo suficientemente amplias para incluir las enfermedades contraídas en el curso del oficio (véase anotación en L. R. A. 1917 D, 104, nota 31), tales enfermedades no se incluyen en la palabra 'accidente' o 'perjuicio personal' como se emplea en los estatutos de otros Estados.

"De modo que un empleado que se dedica a pintar muebles de caoba no puede recobrar una compensación debido a una enfermedad de la mano ocasionada por el contacto con la pintura, puesto que la ley de Michigan no prescribe compensación para las enfermedades contraídas en el curso del oficio. *Jener* v. *Imperial Furniture Co.*, (1918) Mich. 166 N. W. 943. La corte dijo 'Si el daño ocasionado al reclamante se originó por razón de la naturaleza de su trabajo él está excluído de recobrar porque la ley no prescribe una compensación para aquéllos que sufren un daño debido a enfermedades ocasionadas en el curso del oficio. La prueba parece indicar que aquéllos ocupados en pintar muebles con tintura de caoba frecuentemente su-

fren de enfermedades en las manos. Sin embargo, si el daño ocasionado al reclamante se debe no a la·naturaleza general de su ocupación, sino a algún accidente casual, entonces los autos están enteramente desprovistos de cualquier prueba de un accidente. Si el reclamante sufrió un rasguño o raspadura por donde penetró el veneno, los autos nada dicen respecto a cuándo y de qué manera él sufrió el accidente.' Anotación al caso *Re Maggelet*, L. R. A. 1918 F, pág. 872.

''Se alega que uno de los argumentos más fuertes en contra de que se incluyan las enfermedades del oficio entre los daños comprendidos en la ley de compensaciones que no estén expresamente prescritos en ella, es que todas las leyes americanas han sido más o menos adoptadas de las leyes inglesas, y cuando se había declarado que la ley original de ese país no era aplicable a tales enfermedades y antes de aprobarse cualquiera de los estatutos, se enmendó para comprenderlos no con la omisión de la palabra 'accidente' sino por la adición de un precepto de que la inhabilitación producida por una enfermedad del oficio 'se considerará como que ha ocurrido un accidente.' También se agregaron preceptos bien considerados que comprenden la concesión de una compensación en tales casos. *Linnane* v. *Aetna Brewing Co.*, L. R. A. 1917 D, pág. 106.

''Varias prescripciones del estatuto, particularmente la cláusula que exije la notificación del accidente que ha de hacerse al patrono dentro de un término especificado, se ha declarado que indican la intención legislativa de que debe haber un tiempo, lugar y circunstancia a los que puede referirse el perjuicio. *Elke* v. *Hart-Dyke*, (1910) 2 K. B. (Eng.) 677, 80 L. J. K. B. N. S. 90, 103 L. R. N. S. 174, 26 Times L. R. 613, 3 B. W. C. C. 482, 3 N. C. C. A. 230; *Alloa Coal Co.* v. *Drylie*, (1913) W. C. & Ins. Rep. (Eng.) 213, (1913) S. C. 549, 6 B. W. C. C. 398, 50 Scot. L. R. 350, 4 N. C. C. A. 899; *Petschett* v. *Preis*, (1915) 31 Times L. R. (Eng.) 289, 106 L. T. N. S. 741, 76 J. P. 251, 28 Times L. R. 344, (1912) W. N. 105, 5 B. W. C. C. 259.'' Nota al caso de *Adams* v. *Acme White Lead & C. Works*, L. R. A. 1916 A, pág. 290.

Los hechos declarados probados por la corte inferior son finales, pero ¿cuáles son los hechos declarados probados en el presente caso? El juez sentenciador expresa que Alenda era un hombre robusto que no mostraba síntomas de *saturnismo crónico* y cuya muerte tuvo lugar a las pocas horas

después de los primeros síntomas del envenenamiento; pero
también dice la corte que la muerte fué consecuencia del en-
venenamiento debido a la absorción de las sales de plomo
que acostumbraba usar en su trabajo diario.   No consta desde
cuándo Alenda había estado ocupado en este trabajo, aunque
se insinúa que el empleo comprendía un período de varios
años.   No hay ninguna declaración específica en cuanto a la
condición actual de la salud del reclamante en enero 3, cuando
se desarrollaron los síntomas y ninguna sugestión de algún
incidente extraordinario ocurrido ese día, o en alguna otra
fecha, que hubiera podido causar la absorción de una can-
tidad anormal de veneno, ni, exceptuando la posible infe-
rencia de los hechos declarados probados respecto a la con-
dición física anterior y a la rapidez con que sobrevino la
muerte, nada hay que indique que el veneno fué o pudo ser
absorbido ese día en particular, o dentro de un período de-
finido anterior al mismo en cantidad suficiente que produ-
jera la muerte.   No hay nada que demuestre que un ataque
agudo sin síntomas anteriores de envenenamiento, a diferen-
cia de una enfermedad crónica, no podría ser igualmente
consecuencia de la absorción gradual que continuó por un
período considerable de tiempo.   El hecho declarado probado
nada contiene, por tanto, que interpretado razonablemente
pueda decirse que niega distintamente la teoría de un pro-
ceso gradual incompatible con la idea de cualquier fecha pre-
cisa en la cual el alegado accidente pudo haber ocurrido y
algo así, por lo menos, se necesitaría para excluir definiti-
vamente el caso de la clase general a que pertenece.

La incompatibilidad, de haber alguna, entre el hecho de-
clarado probado de que la muerte se debió al proceso gra-
dual ordinario, si no necesario, de la absorción de la plom-
bagina contenida en la sustancia que acostumbraba usar
Alenda en su trabajo diario y la declaración absoluta en
cuanto a su buen estado de salud anterior, y que estaba libre
de todo síntoma de *saturnismo crónico,* y la cuestión más im-

portante de que no se hicieron conclusiones de hecho más definidas, puede haberse debido a que el juez sentenciador tenía su mente concentrada en la cuestión de si el caso desde cualquier punto de vista podría o no ser considerado como no comprendido en el alcance del estatuto.    Y de la opinión del juez sentenciador considerada en conjunto sí parece razonablemente claro que él creyera que la cuestión de si la muerte fué o no consecuencia de una enfermedad originada en el curso del oficio era de poca importancia.    Pero sea esto como fuere, los hechos declarados probados según ya se ha indicado ni fijaron la fecha en que el alegado accidente tuvo lugar, ni indicaron que la absorción, que se consideró fué la causa de la muerte, tuvo o pudo tener lugar en o dentro de cualquier período de tiempo determinado del cual podría haberse hecho la notificación como requiere la ley.

Será bastante con agregar que en el artículo 4 de la ley la Legislatura no tuvo la intención de enumerar todos los casos que no estén comprendidos en el alcance de dicha ley sino solamente especificar las circunstancias en las cuales no debe permitirse a un demandante que pueda recobrar, no obstante la posible prueba de los hechos que en ausencia de tal restricción constituirían un perjuicio ocasionado por un accidente.    Preceptos semejantes son bastante comunes en la legislación de esta clase y generalmente se les incluye en el artículo en que se hace referencia a los perjuicios sufridos por accidentes, como una limitación al alcance de esa frase.    Tales cláusulas no tratan de nada que en ningún caso podría considerarse como una lesión originada por un accidente, y el principio de *expressio unius est exclusio alterius* invocado por la corte inferior no puede tener debida aplicación.

La sentencia apelada debe ser revocada.

*Revocada la sentencia apelada.*

Jueces concurrentes: Sres Presidente Hernández y Asociados Wolf, del Toro y Aldrey.