## EMPLOYERS' LIABILITY ASSUR. CORPO-RATION, LIMITED, OF LONDON, ENG-LAND, v. FLINT et al. (No. 9238.)

Court of Civil Appeals of Texas. Galveston.
Feb. 21, 1929.

Rehearing Denied March 7, 1929.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

W. J. Howard and E. T. Chew, both of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellant to set aside an award of the Industrial Accident Board in favor of appel-lees Mrs. Josephine Flint and J. W. Howard against appellant.

By their answer, appellees alleged their cause of action upon which the award was made, and asked judgment against the appellant for a sum in excess of that for which the judgment of the trial court was rendered.

The substance of appellees' cause of action is sufficiently stated in appellant's brief as follows:

"That J. T. Flint was the husband of appellee, Mrs. Josephine Flint, and that he received an accidental injury in the course of his employment on or about May 31, 1927, and died on or about June 8, 1927, as a result of said accidental injury.

"As to the kind and character of accidental injury sustained, it was alleged that on May 31, 1927, the deceased Flint was engaged in dipping material or automobile parts or the rag with which he was wiping same in a certain vat or can which contained a certain character of liquid; that the said material or parts or rags were by the said J. T. Flint being thrust into such liquid and hastily withdrawn and the material piled in a suitable place, and that during this process the liquid either splashed on his foot or dripped thereon from the material and burned, bruised and blistered his foot, thus removing the skin from a portion of the foot, and that while so engaged in said work, his foot became infected and that as a result of such injury and infection, he died on June 8, 1927.

"It was further alleged .that all preliminary prerequisites required by the Workmen's Compensation Act had been complied with in order to give the District Court of Harris County, Texas, jurisdiction."

Appellant answered appellees' suit by a general demurrer and general denial. The trial in the court below with a jury resulted in a verdict and judgment in favor of appellees.

In answer to issues submitted by the court, the jury found that "J. T. Flint had an accident in the course of his employment with the Ford Motor Company, in the place of employment, on May 31, 1927," that, as a proximate result of such accident, he sustained an injury to his right foot, and that such injury was the proximate cause of his death. The jury further found that no manifest hardship or injustice would result to Mrs. Flint if her claim for a lump sum compensation should not be allowed.

By agreement in evidence, it was shown that the Ford Motor Company carried a workmen's compensation policy with the appellant; that notice of injury was duly and properly given; claim for compensation made; award made by the Industrial Accident Board; timely notice of appeal and timely filing of suit.

The evidence shows that appellees are en-

titled to the compensation due under the policy for the death of J. T. Flint; such compensation being shown by the evidence to be the sums adjudged to appellees, respectively.

Appellant assails the judgment on the ground that the evidence is insufficient to sustain the finding that the death of J. T. Flint was the result of an accidental injury suffered by him in the course of his employment. This contention is based upon the theory that, in order to hold appellant liable on its contract of insurance, it must be shown by the evidence that the germs or bacteria which caused the death of J. T. Flint entered the wound on his foot while he was engaged in the course of his employment.

The authorities do not sustain this view of the law applicable to cases in which liability is claimed for accidental death resulting from blood poisoning consequent upon a traumatic injury. If appellant's contention is sound, death from blood poisoning could never be shown to be the result of an accidental injury sustained in the course of employment; since the germ which produces the poisoning of the blood cannot be seen, the exact time and place of its entry into the wound can never be shown.

The following correct summary of the evidence in this case is copied from appellee's brief:

"J. T. Flint, the husband of appellee, Mrs. Josephine Flint, died on the 8th day of June, 1927. The cause of his death was blood poisoning or an infection of the blood caused by a germ entering his system through a cut or abrasion on his foot. This cut or abrasion he received while in the employ of Ford Motor Company of Houston, Texas, on May 31, 1927. Said Flint, at the time of his injury, lived at Eureka, about six or seven miles from the Court House in Houston, Texas, and it is about two or three miles from the Court House to the Ford Motor Plant. Flint left for his work on the morning of May 31, 1927, at 5:00 o'clock A. M. and his working hours were from 6:00 A. M. until 2:30 P. M. Flint was employed in the enamel department of the Ford Plant and the nature of his duties, as testified by his foreman, Mr. Dial, was to wipe certain parts of the cars with the solution known as M-167, being a special solution between coal oil and gasoline, a towel being dipped in this solution and the material being then wiped off with it. The foreman further testified that on the 31st day of May, 1927, said J. T. Flint was working in the enamel department of the Ford Motor Company. He further stated that it was possible for some of the solution to drop on his shoes; that there was some on the floor, but not a great deal; that they dipped the towel in this solution M-167 and would then take it out; that they were supposed to wring it out, but sometimes they did not, that it would drip on the shoes and then on the floor. The foreman further testified that they had a rule to inspect the shoes twice a week and if they found any of the men with bad shoes to send them home and get a good pair of shoes. He testified further that if the men had on good shoes the solution M-167 would not likely get their feet wet. He further stated that a man can get burned with M-167 easy enough. There is no doubt but what at times at least this solution would burn the flesh. Not only did Mr. Dial, the foreman, so state, but the witness R. E. Summers so stated. Dr. Cruse, a witness for the appellant, testified 'most any kind of a solution, kerosene or gasoline, where you get it in your shoe and cut the air off, might produce an irritation * * * most anything will burn if you exclude the air from it.'

"Flint's foot was all right when he went to work on the morning of May 31st. The witness, E. F. Turney, so testified, and so did Mrs. Flint. When he went home that afternoon at 3:30 his foot was swollen and red and blistered between the toes and on the ball of the foot. Mrs. Flint testified that when her husband got home about 3:30 on May 31st, the day of his injury, his shoes were wet. He complained of his foot at that time and said that it was paining him right smart, and he told her he got his foot injured by the stuff dropping on his shoe and his shoe was wet and the stuff dropped on his foot off the material; that he first began to feel the effects at about 11:00 or noon, and he pulled off his shoe and his foot was red and inflamed at the time. The witness Turney testified, that he saw Flint about 4:00 P. M. on the day he was injured and that at that time Flint told him he got his foot injured by the solution or paint, or whatever he was working with, dropping on it."

We agree with appellees that the evidence amply sustains the findings of the jury that the death of J. T. Flint was the proximate result of the accidental burning of his foot while engaged in the performance of his work at the Ford Motor Company plant. The undisputed evidence shows that the chemical mixture Flint was using in his work, if it were dropped upon and penetrated the leather of his shoe, would have caused the burns and blisters on his foot of which he complained, and which were observed by his wife when he took off his shoe after his return from work, and further shows that these burns and blisters upon his foot opened the way for the entry into his blood of the germs or bacteria which so poisoned the blood as to cause his death. The entry of these germs being a natural probable sequence of the injury to his foot, such accidental injury was the proximate cause of his death. The evidence further shows that there were no burns or blisters on his foot when he left home in the morning to go to his work.

From the undisputed facts shown by the

evidence above set out, we think the only reasonable inference that the jury could have drawn was that the burns and blisters found upon Flint's foot when he returned home were caused by his careless dropping of the inflammatory chemical upon his shoes while engaged in his work, and its penetration through the shoe to his foot. It is well settled that an injury thus caused is accidental. Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, Ann. Cas. 1918A, 517.

It cannot be reasonably inferred that. he intended to spill or drop the chemical upon his foot, or that he realized or expected that he had spilled or dropped enough of the liquid to penetrate his shoe and burn and blister his foot, and the fact that the burning and blistering did not occur immediately after the liquid was dropped on the foot in no way affected the accidental character of the injury sustained thereby. If Flint had been shoveling fire from a furnace and had dropped hot coals upon his foot, the accidental character of the injury would not have been more clearly shown.

■ The facts of this case negative the contention of appellant that the blood poisoning which caused Flint's death was an occupational disease, and not the result of accidental injury. The cases of Ætna Life Insurance Co. v. Graham (Tex. Com. App.) 284 S. W. 931, Buchanan v. Maryland Casualty Co., 116 Tex. 201, 288 S. W. 116, and Jerner v. Imperial Furniture Co., 200 Mich. 265, 166 N. W. 943, are not in point. In each of the two cases first cited, the death of the insured was caused by a disease which was gradually contracted because of the conditions surrounding the place in which the deceased performed his work, and could not have been held an accidental death. The Jerner Case, supra, is more nearly in point, but does not present a case of accidental injury. The sore through which the germs entered the blood of the deceased in that case appears to have been gradually produced by the continued absorption of chemicals used by the deceased in his work. Such sore might be more properly regarded as an occupational disease than an accidental injury. The facts of this case do not show a diseased condition of Flint's foot caused gradually by the conditions under which he worked, nor by the continued gradual absorption of the chemical used by him in his work, but, on the contrary, show that the abrasion on his foot through which the fatal germ entered his blood was caused by the one accidental application of the inflammatory liquid. These conclusions are fully sustained by the case of Texas Employers' Ins. Ass'n v. Drews (Tex. Civ. App.) 297 S. W. 633.

Appellant's further objection to the judgment on the ground that the trial court erred in allowing Mrs. Flint and the witness Turney to testify to statements made by the deceased when he reached home on the day he received the injury to his foot, as to when and how the injury occurred, cannot be sustained. These statements of the deceased have been heretofore set out in substance in our fact findings. The record discloses the following facts as to the time and circumstances under which the statements were made to witnesses:

■ Flint got off from work at 2:30 p. m. He returned home at 3:30 p. m. He had to travel about nine miles through city traffic. There is nothing to show that he did not come straight home from work. Considering the distance and allowing him time to change his clothes, he had just about time enough to do so. He made the statement to his wife as soon as he got home. His foot was paining him at the time, and it was sore and swollen. He made the same statement to the witness Turney, a neighbor who came to his home only about thirty minutes later. There is nothing in the circumstances of this case to show that the statements were the result of premeditation or deliberate design. They sprang forth as the natural result of his pain and injury in telling his wife and his neighbor how his injury occurred. There is nothing to show that he hoped to gain anything by the statements.

We do not think the trial judge abused his discretion in holding the statements admissible in evidence under the res gestæ rule. We think the circumstances under which the statements objected to were made show that they were made without premeditation, were voluntary and spontaneous, and were made at a time near enough to the occurrence to negative the idea of any deliberate design to misstate the facts There is nothing in the evidence to cast any suspicion or raise any doubt of the truth of the statements. As we interpret the decisions of our Supreme Court, we cannot hold that the court erred in admitting the statements in evidence. Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Tex. 226, 7 S. W. 805; City of Galveston v. Barbour, 62 Tex. 172, 50 Am. Rep. 519; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647.

What we have said disposes of all the material questions presented by appellant's brief. All of the propositions presented in the brief have been considered, and none of them should, in our opinion, be sustained. The judgment is therefore ordered affirmed.

Affirmed.