**ÆTNA LIFE INS. CO. v. GRAHAM et al.**
**(No. 667–4553.)**

(Commission of Appeals of Texas, Section B. June 9, 1926.)

1. **Master and servant** ⊚⊐373—**Tuberculosis contracted gradually from conditions of work held not injury by "accident" within Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.).**

Employee dying of tuberculosis contracted gradually by reason of her exposure during her work to gases, fumes, powders, and various chemicals *held* not to have suffered an accidental injury within meaning of Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident—Accidental.]

2. **Master and servant** ⊚⊐373.

Generally industrial diseases gradually developed as natural result of employment are not compensable within Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.), though not expressly excluded.

Error to 'Court of Civil Appeals of Tenth Supreme Judicial District.

Action by Carrie 'Graham and another against the Ætna Life 'Insurance Company. Judgment of the district court for plaintiffs was reversed, and cause remanded, by the Court of Civil Appeals (279 S. W. 923), and defendant brings error. Judgment of district court and Court of Civil Appeals reversed, and judgment rendered for defendant.

Joseph W. Hale, of Waco, for plaintiff in error.

E. C. Street and H. L. Taylor, both of Waco, for defendants in error.

POWELL, P. J. [1] Artie Graham was the daughter of Kate and Jesse Graham. She began working for the Thomsen Company of Waco, manufacturers of shoe polish, about two years before she resigned in May, 1922, because of ill health. On January 31, 1924, she died of tuberculosis. The·Thomsen 'Company was a subscriber under the Workmen's Compensation Act, and was insured by the Ætna Life Insurance Company. Upon the death of Miss Artie her relatives were notified, in due course, that the Industrial Accident Board of Texas had denied the claim for compensation. The Board adopted the view which we now entertain and which we shall later state. Being dissatisfied with the decision of the Board, an appeal was had to the courts. Upon a trial in the district court before a jury, compensation was awarded. Upon appeal, the Court of Civil Appeals reversed the judgment of the district court and remanded the cause for a new trial. See 279 S. W. 923. It was reversed mainly because, in the judgment of the Court of Civil Appeals, the statute in force when the alleged injury was received did not allow claimants to recover in the absence of dependency. In concluding its opinion, the Court of Civil Appeals said:

"There are several other questions raised by appellant by its assignments duly briefed, but, as they will not likely arise on another trial, it is unnecessary to pass on same. The errors above pointed out require a reversal of this case, but, as the case was tried upon an erroneous theory as to what statute was applicable to the case, we will not render judgment '(Ogg v. Ogg [Tex. Civ. App.]) 165 S. W. 914; Scanlon v. Galveston, H. & S. A. Ry. Co. [Tex. Civ. App.] 86 S. W. 930; Camden Fire Ins. Co. v. Yarbrough [Tex. Com. App.] 215 S. W. 842), but will remand for another trial."

In the view we take of one controlling question in this case, it is not necessary for

---

⊚⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

us to enlarge upon the statement thereof as contained in the opinion of the Court of Civil Appeals. Considered most favorably from the standpoint of defendants in error, it is conclusively shown that Miss Artie was exposed to the natural surroundings of her employment; that such exposure gradually developed a disease known as tuberculosis, from which she died in about two years after her employment ceased. In other words, her death was due to what is called an industrial or occupational disease, and not to an accidental injury. It was her duty to stir and boil various chemicals used in the manufacture of shoe polish. From her duties, and as incident thereto, arose certain gases, fumes, and powders, all more or less poisonous and irritating. She inhaled some of these fumes. She was necessarily exposed to the dangers incident to the character of her employment or occupation. She suffered no accidental injury, and therefore her claim is not compensable.

Perhaps one of the most capable writers on Workmen's Compensation is Honnold. We quote from his admirable work, page 536, as follows:

"The legislative tendency abroad and in this country has been to deal with industrial accidents distinct from occupational diseases. None of the acts in this country expressly include diseases. Of the ten acts which on their face do not exclude occupational diseases, three, the acts of Ohio and Michigan and Connecticut, have been construed by the courts to exclude them, and two, the acts of California and Iowa, have received a similar administrative construction. A disease contracted in the course of employment is not a personal injury by accident, unless it arises from an event capable of being identified with respect to time, place, and circumstances. It follows that where an 'accident' is made essential, either in the body or by reference to the title of an act, to the right to recover compensation, and no exception is made with respect to disease, as in the present English act, there can be no recovery for disease contracted by gradual process, commonly known as industrial or occupational disease, such as lead poisoning among painters, ptomaine poison, typhoid fever, or enteritis, contracted from long, continuous work about a sewer or drain, and other diseases or ailments contracted under similar circumstances."

Again, we quote from page 284 of the same author's work as follows:

"The usual purpose of these acts is to compensate for injuries resulting from industrial accidents only, and not for occupational diseases. The determination of what constitute industrial accidents consequently becomes important. Loss of vision by wood alcohol poisoning is an industrial accident, rather than an occupational disease, particularly where the effect of the wood alcohol was not a cumulative and gradual destruction of the optic nerve, but a sudden attack precipitated by an extraordinary use of the liquid just before the eye trouble appeared. Citing authority."

[2] Our Texas act does not expressly either include or exclude diseases. It seems from Honnold's work that practically all the states expressly exclude such diseases. And the author states that where, as is true in a few states, they are not expressly excluded, in most of such instances they have been eliminated by judicial or administrative construction. In other words, as a general rule, industrial diseases, gradually developed, as a natural result of the employment, are not within the acts of this kind.

It is interesting to see what our Supreme Court has thought of this matter. Construing the original act of 1913 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h et seq.), that court, in a very able opinion by Chief Justice Phillips, limited the operation of the act to "accidental injuries." We refer to the case of Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. In that case, the learned Chief Justice said:

"Here the character of injuries, or wrongs, dealt with by the act becomes important. Notwithstanding the breadth of some of its terms, its evident purpose was to confine its operation to only accidental injuries, and its scope is to be so limited. Its emergency clause declares its aim to be the protection by an adequate law of the rights of employees injured in 'industrial accidents,' and the beneficiaries of such employees as may be killed 'in such accidents.'"

To the same effect, construing later acts, is the opinion of this section of the Commission of Appeals in the case of Castleberry v. Frost-Johnson Lumber Co., 283 S. W. 141.

But, a case which we think directly in point as indicating the view of our Supreme Court upon the very issue now before us is that of Texas Employers' Insurance Association v. Jackson, 265 S. W. 1027. In that case, the opinion was written by Judge Bishop for Section A of the Commission of Appeals, and he was construing the act of 1917 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) which, in that respect, is still the law. We quote as follows from Judge Bishop's opinion in that case in order that the nature of the injury there under consideration may be understood here:

"Defendant in error, J. B. Jackson, filed suit in the county court of Wichita county against the Texas Employers' Insurance Association, under the Workmen's Compensation Act, to recover damages. In his petition he alleges the injury sustained by him in substance as follows: That he was sent by his employer, who was a subscriber under said act, with a truck, on September 4, 1921, to a lease about 50 miles northwest of Wichita Falls, to get a load of material to be delivered to another oil field in Wichita county; that while en route to said lease a rainstorm came up, caught him out in the open prairie, and thoroughly soaked and wetted his clothing; that upon arriving at the lease about 10 o'clock at night of said day, he was compelled to sleep in a dilapidated shed, and that during the night another severe rain

came up and wetted his clothing; that said two wettings caused him to have a cold next morning, which weakened his resistance and made him easily susceptible to the inroads of disease from other exposure; that the next day, after having loaded a rig on his truck and having performed strenuous labor which caused him to perspire freely, another rainstorm overtook him and completely soaked and drenched him, while on the return trip for a second load; that the last wetting, together with the two previous soakings, caused a severe case of pneumonia, resulting in incapacity for work for some period of time, confinement in a hospital, incurring doctor bills, etc.

"The trial court sustained a general demurrer to the petition, and defendant in error having refused to amend, the cause was dismissed. On appeal the Court of Civil Appeals reversed the judgment of the trial court and remanded the cause, holding that, though the injury complained of was not an accidental injury, same was within the provisions of the Workmen's Compensation Act defining 'injury' and 'personal injury' and for this reason the petition stated a good cause of action."

The Commission of Appeals held that no cause of action was stated in the petition, and that the county court had correctly so held. It recommended that the latter's judgment be affirmed, and that the judgment of the Court of Civil Appeals be reversed by the Supreme Court. The latter court entered the judgment recommended.

We think the Jackson Case, supra, a very much stronger one for the claimant than the one at bar. Jackson suffered from pneumonia, a disease. It was brought on by exposure which was incident to his trucking duties for his employer. But, unlike the case at bar, the disease there developed suddenly from what seems to have been a succession of more than ordinary exposure. In each case, the disease was the direct result of exposure incident to the occupation or industry in which the employee was engaged. We think Judge Bishop's holding is sound. If so, there is no escape, as we see it, from the conclusion that Miss Artie's death was not due to an accidental injury within our Compensation Act. Our statute has never gotten away from the central thought that the injury must be accidental in its nature. It is only upon that theory that the act itself has been held constitutional by our Supreme Court.

It is clear to us that, so far as our Supreme Court has spoken, it has shown its approval of the rule, well-nigh universal elsewhere, that recovery cannot be had for what is termed an occupational or industrial disease. We think the Industrial Accident Board correctly decided the case at bar.

What we have said disposes of this case. Therefore, we do not pass upon any of the other assignments in the application nor upon the correctness of the other holdings by the Court of Civil Appeals in its opinion.

We recommend that the judgments of the district court and Court of Civil Appeals be reversed, and judgment rendered by the Supreme Court in favor of plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reversed, and judgment rendered for plaintiff in error.