**SOUTHERN CASUALTY CO. v. FLORES et al. (No. 1047–4907.)** *

Commission of Appeals of Texas, Section A.
Jan. 4, 1928.

**I. Master and servant** ☞371—**Compensable "injury" must do harm to physical structure of employee's body and arise out of or originate in employer's work (Rev. St. 1925, art. 8306, § 8, and art. 8309).**

In order for claimants to recover compensation for employee's "injury" under Rev. St. 1925, art. 8309, and article 8306, § 8, there must be harm or damage to physical structure of employee's body and injury must arise out of or originate in work of employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Injury.]

**2. Master and servant** ☞373—**Death from heart failure while walking up sharp incline held not compensable, where employee's condition was such that slight exertion invited death (Rev. St. 1925, art. 8306, § 8, and art. 8309).**

Where employee had disease of syphilis, having no origin in employment, in that degree which converted slightest physical exertion into invitation to death, employee's death due to heart failure while walking up sharp incline was not compensable under Workmen's Compensation Law (Rev. St. 1925, art. 8309, and article 8306, § 8), since case belonged to that class in which supposed injury came from hazard to which workman would have been equally exposed apart from employment.

**3. Master and servant** ☞371—**Workmen's Compensation Law does not provide for health or accident insurance.**

Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), does not provide for health or accident insurance.

**4. Master and servant** ☞373—**Actual injury must be shown in proper way before inference may be drawn that final result is attributable to injury originating in employment (Workmen's Compensation Law).**

An actual physical injury, internal or external, must be shown in proper way before an inference legally may be drawn that final result in respect to which compensation is claimed under Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309) is attributable to an injury originating in employment.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Proceeding under the Workmen's Compensation Act by Gertrude Flores, and others, for the death of her husband, Frank Flores, opposed by Dave Lehr, employer, and Southern Casualty Company, insurer. The Industrial Board denied the claim, and claimants, by way of appeal, brought suit in the district court against the Casualty Company. Judgment for claimants was affirmed by the Court of Civil Appeals (294 S. W. 932), and the Cas-

ualty Company brings error. Reversed and rendered.

Frank K. Williams, of San Antonio, for plaintiff in error.

Samuel Belden, Perry J. Lewis, H. C. Carter, Champ G. Carter, and Randolph L. Carter, all of San Antonio, for defendants in error.

NICKELS, J. A judgment in favor of the beneficiaries for compensation for death of an employee insured in accordance with the Workmen's Compensation Law (articles 8306–8309, R. S. 1925) was affirmed by the Court of Civil Appeals. 294 S. W. 932. Writ of error was allowed upon assignments that the record is devoid of evidence showing or tending to show "death resulting from injury" (article 8306, § 8) which is compensable.

Lehr (the "subscriber") was a cement contractor, having at the time in question a "job" in course of completion at "228 Argyle avenue," San Antonio. The nature of the "job" is not disclosed, except as inferable from the prior completion of a "ribbon driveway" between the front of the "garage" and the "sidewalk." Lehr's employees, including Flores, were supposed to begin actual work at 8 o'clock a. m. Apparently, the tools were kept overnight in the "garage." The distance between the front of the "garage" and the "curb" at nearest side of the street, along the driveway mentioned, is 150.5 feet. From the front of the garage to a point 127 feet toward the street the surface of the driveway gradually rises an aggregate of 9 feet and 2 inches; thence, to the "curb" there is a gradual decline of 2 inches. From the intersection of "Argyle avenue" and "Mary drive" to "228 Argyle avenue" there is an incline "that is several times as steep as the driveway," that intersection being the point of disembarkation for street car passengers going to "228 Argyle avenue." Shortly before 8 o'clock (exact time not given) on the morning in question, Flores arrived (via the street car line, etc.) at the "garage." Thereafter and "about five minutes before 8 o'clock" he left the "garage" and walked up the driveway to a point in the sidewalk (14 feet from the "curb"), there passed Castillo (another employee), and "went on about 8 feet" and "fell" and died immediately or within a few minutes. Castillo was a truck driver for Lehr; he had just arrived at the "job" with some materials and a "work ticket" (to be signed by Flores). As Flores approached, Castillo had the "work ticket" in his hand. Castillo said:

"He was coming toward me along the driveway from the garage. I was on the sidewalk." "I handed him the ticket and he did not receive it, and I asked him, 'What else do you need, Frank?' but he never answered and went on about eight feet from where I was and I saw him fall. I rushed up to him and asked

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 7, 1928.

him what was the matter; he looked up to me and said, 'Nothing.' "

Flores was 33 years of age, weighed about 170 pounds, and, apparently, was strong and "healthy." He had been working for Lehr for some months and, so far as shown, without loss of time from illness or inability of any kind.

Autopsy was performed shortly after death by Drs. Stout and Timmins, and their testimony about what was found is the only direct evidence touching the matters of importance here. Externally, the body was in "good condition" and without evidence of violence; some "old scars" were found on a leg. On the heart and lungs "scars," "old sores," or "lesions" were found. The tissue and "architecture" was otherwise "unchanged," except that the "heart" had "stopped" and "collapsed." ` Blood was taken from the heart, and upon test it showed "four plus Wasserman," the maximum showing of syphilis. Specimen were cut from the heart, and they tested as did the "blood." The balance of the testimony is deduction. There was agreement upon the proposition that Flores was in that dangerous condition because of "heart trouble" in which death might come with any physical exertion. Some of the experts attributed death to the disease alone; others testified that the exertion of the walk might have been the immediate cause or an immediate contribution to the cause of death.

[1] It is not shown that Flores knew he was expected to sign the "work ticket" at the time he left the garage or afterward, and his conduct and omissions in approaching Castillo and passing him might well leave ground for debate on the question whether in making his last journey he was engaged in or about his master's business, but for instant purposes we assume that he traversed the driveway in order to perform the duty of signing and, thus, in the course of employment. With that assumption indulged, various questions remain: (a) Was there "harm or damage to the physical structure of the body" from Flores' movement at the time? for that is the basis of compensability. Article 8309; section 8, art. 8306. (b) If so, did that "injury" arise out of or originate in the work of the employer? Lumbermen's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 110, 246 S. W. 72, 28 A. L. R. 1402; In re McNicol, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306; Hopkins v. Michigan Sugar Co., 184 Mich. 87, 150 N. W. 325, L. R. A. 1915A, 310; Federal Rubber Mfg. Co. v. Havolic, 162 Wis. 341, 156 N. W. 143, L. R. A. 1916D, 968.

[2] Syphilis and its resultant, of course, had no origin in the employment. Their presence in that degree which converted the slightest physical exertion into invitation to death being shown by evidence in which there is no contradiction, the case belongs to that class in which the supposed "injury" comes "from a hazard to which the workman would have been equally exposed apart from the employment," and, hence, is noncompensable. Id. The testimony relied upon to uphold the claim includes admission that the slightest movement of a limb even while the person with that condition of heart is asleep in bed might well consummate death. The element of "causative danger * * * peculiar to the work," etc., is lacking.

Again: The testimony shows that so far as could be discovered the "tissue," "architecture," etc., of the body had undergone no immediate change, save that one "side" of the "heart" contained too much blood and the other side none at all and, thus, that the "heart" was in part "contracted" and in part "collapsed." If as a result of the walk there was "harm or damage to the physical structure of the body" or consequent "disease or infection" (article 8309) from which death resulted (section 8, art. 8306), attempted establishment of those facts includes the vice (M. P. Ry. Co. v. Porter, 73 Tex. 304, 307, 11 S. W. 324; United States v. Ross, 92 U. S. 284, 23 L. Ed. 707) of superimposed inferences. The evidence and argument on the point is thus summed in claimants' brief:

"In the case at bar the physicians clearly testified that the exertion Flores underwent was ample to injure his weakened heart and cause his death."

The reasoning proceeds: (a) It is possible that the exertion caused some undisclosed "harm or damage to the physical structure of the body," although the same "harm or damage" may as well have occurred if Flores had been walking toward 228 Argyle avenue in search of employment; therefore, some such "harm or damage" did occur. (b) Since "harm or damage" did occur, although its nature or degree is unknown, it caused or contributed to cause death. The basic data, it may be conceded, make up a scintilla of evidence; but so long as the doctrine of Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059, remains in effect, the data cannot be regarded as evidence itself touching the important matter.

[3] The Workmen's Compensation Law does not provide for health or accident insurance; and because it does not go that far, Flores' death must be regarded as beyond its reach.

There have been cited in support of the claim cases from England and various jurisdictions in this country, and in reading those cases we have had references to others. But we find in none of them support for the contention; on the contrary, when the differences between the relevant provisions of the statutes of England and of those states on the one hand, and those of our act, upon the other, are kept in mind along with the differences of evidence in those cases as compared with that in the present record, the authority is against the claim. This has illustration in

the English cases. In Clover, Clayton & Co. v. Hughes, 1910 App. Cas. 242, 3 B. W. C. C. 275, and McArdle v. Swansea Harbour Trust 11 Neg. Comp. Cas. Ann. 175, there was proof of "exertion" and of an actual "rupture of an aneurism" and that immediately before the "straining" the "rupture" had not occurred. Yates v. So. Kirby, etc., Collieries, 3 B. W. C. C. 418, and Pugh v. L. B. S. Coast Ry. Co., 2 Q. B. 248, exhibit instances of fright and nervous shock ripened in fact into neurasthenia (a physiological alteration) with consequent impairment of capacity. "Compensation" as for "accidental injuries," etc., was allowed in each of the three cases first mentioned, and in the last a recovery was permitted under a policy covering "all accidents, however caused, occurring to the insured in the fair and ordinary discharge of his duties." In O'Hara v. Hayes, 3 B. W. C. C. 419, it appears, a workman in discharge of duty was hurrying with a parcel (weighing seventeen pounds) to a railway station and while doing so "dropped dead"; in Kerr v. Ritchies, 6 B. W. C. C. 419, it is shown that the workman had been "repeatedly lifting baskets" just before and contemporaneously with the attack of illness. Recovery in each case was denied because the "man died while he was doing his normal work" and in the absence of "any particular event or occurrence to which death could be attributed."

So, in Schroetke v. Jackson-Church Co., 193 Mich. 616, 160 N. W. 383, L. R. A. 1917D, 64, La Veck v. Parke, Davis & Co., 190 Mich. 604, 157 N. W. 72, L. R. A. 1916D, 1277, Bayne v. Storage & Cartage Co., 181 Mich. 378, 148 N. W. 412, and Babich v. Oliver Iron Min. Co., 157 Minn. 122, 195 N. W. 784, 202 N. W. 904, there was either direct proof or mutually assumed existence of fact of physical injury leading to results which made the employees' conditions "accidental injuries" within the meaning of the Michigan and Minnesota statutes—which in the standard of compensability were like the English statute and unlike the Massachusetts statute (In re Madden, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000) under which In re McNicol, supra, was decided, or the Texas Act (section 8, art. 8306; article 8309).

Two things are observable in the opinion in Carroll v. Industrial Comm. of Colorado, 69 Colo. 473, 195 P. 1097, 19 A. L. R. 107: (a) The statute involved provided compensation for "death accidentally sustained," and (b) "the evidence shows * * * that, if Joseph Carroll had been doing his work in the open air, the work would not have brought on a heart attack" (from which he died). What the evidence was that showed the fact mentioned is not disclosed. In Fidelity & Casualty Co. v. Industrial Acc. Comm. of Cal., 177 Cal. 614, 171 P. 429, L. R. A. 1918F, 856, there was some proof of injury to the physical structure with a ruling that the injury was

sustained "by accident" within the meaning of the statute then in force. Santa v. Industrial Acc. Comm. of Cal., 175 Cal. 235, 165 P. 689, discloses proof of a fall "from a ladder" with resultant "fracture of the pelvic bone" with a ruling that death might be traced to that injury and, thence, to the employment. Winter v. Atkinson-Frizelle Co., 88 N. J. Law, 401, 96 A. 360, was decided upon the theory that a mere "accident" is sufficient (under the New Jersey statute) and did not involve the question of presence or absence of such "injury." Those cases, then, give no assistance in determination of the question of absence or presence of evidence tending to show that kind of "injury" required by our statute.

In the Madden Case (Mass.), there was evidence, given by the employee, that while "pulling carpets" she "felt something give" and shortly thereafter "felt something else give way" inside her body; in Brightman's Case, 220 Mass. 17, 107 N. E. 527, L. R. A. 1916A, 321, there was proof of "acceleration of previously existing heart disease" by something occurring during employment; and in Re McNicol, supra, there was evidence of "blows or kicks administered" to the complaining employee by a fellow worker.

Some Texas cases may well be noted. In Southwestern Surety Ins. Co. v. Owens (Tex. Civ. App.) 198 S. W. 662, it appears that in April the workman had "suffered from a hemorrhage from the lungs or chest" immediately following "an injury while lifting a piano," but that "he recovered from the effect of that injury in a short time and went back to work." In October, following, he was engaged in "stacking cans of paint," each weighing "90 to 95 pounds." The "cans" were being "stacked" five tiers high. While lifting one of the "cans" to its place in the fifth tier, about five feet above the floor on which he was standing, blood gushed from his mouth, he "gasped for breath" and became disabled. Millers' Indemnity Underwriters v. Schrieber (Tex. Civ. App.) 240 S. W. 963, exhibits a case very much like the present in the aspect of the employee's apparent condition of health and body, as contrasted with his real condition, prior to the alleged "accident" (that is, in each case the employee was apparently sound but, in truth, had syphilis which had progressed to the dangerous stage), but in that case there was direct evidence to show that the employee stepped on "an iron pipe," "which caused him to slip and fall" from a scaffold downward and strike his head against "brick bats" (or other hard substances) with such force as to leave "several bruises upon his forehead and a bruise or two on his body." In Millers' Indemnity Underwriters v. Heller (Tex. Civ. App.) 253 S. W. 853, it appears that the workman, whose duties were the feeding of cotton seed into a conveyor by use of his hands, within a few moments of beginning work, and as a result of a friendly

scuffle with another person, had caused one of his fingers to be slightly "punctured" by a "lead pencil." Within about 40 minutes the wound began to cause pain, which was temporarily relieved at different times by applications of turpentine and kerosene, but which had become so intense within five hours as that "he had to quit work." The wound was examined by a physician some six or seven hours later and was found to contain "much dust and dirt, and evidences of lint off of cotton seed, but * * * not * * * any evidence of a lead pencil"; "septic or poisonous germs were found to have gotten into the wound, and septicæmia or blood poisoning had set up."

There was no evidence of rupture, or even of disease, pre-existent the alleged "accident" in Roland v. Employer's Casualty Co. (Tex. Civ. App.) 290 S. W. 895, but "rupture of the appendix" was discovered several days afterward in treatment during sickness commencing immediately after the "accident," and it was shown, too, that the employee at the time of the "accident" was engaged in lifting "a pipe * * * weighing about 450 pounds"; that he immediately sat down and "gave evident signs of being in distress or pain." In Consolidated Underwriters v. Free (Tex. Civ App.) 253 S. W. 941, Travelers' Ins. Co. v. Smith (Tex. Civ. App.) 266 S. W. 574, and Texas Emp. Ins. Ass'n v. Jimenez (Tex. Civ. App.) 267 S. W. 752, is to be found a series of cases involving the question of compensation for results of disease superinduced by injuries occurring on previous dates; but in each of them it will be found there was evidence assumed to show actual injury to body or parts —in the Free Case, a blow on the head producing a "fractured skull," in the Smith Case inhalation of chlorine gas, and in the Jimenez Case "hurt in his side from pushing" and, probably, inhalation of "ammonia fumes." Compensation was allowed in each of the three cases, as, also, in the Roland Case. Writ of error was refused in the Free Case and application therefor was dismissed for want of jurisdiction in the Jimenez Case. Writ of error was granted in the latter case, and it is now pending in the Supreme Court.

Buchanan v. Maryland Casualty Co. (Tex. Com. App.) 288 S. W. 116, Tex. Emp. Ins. Ass'n v. Jackson (Tex. Com. App.) 265 S. W. 1027, and Ætna Life Ins. Co. v. Graham (Tex. Com. App.) 284 S. W. 931, are cases in which compensation was denied for incapacity or death resulting from disease attributable in origin to things which happened in the course of employment but which did not, of themselves, constitute an injury to the physical structure, etc., of the body. Jackson got "wet" in successive rains, and pneumonia followed. Miss Graham breathed chemical fumes, and this with other exposure "to the natural surroundings of her employment" developed tuberculosis. Buchanan died of typhoid fever originating in impure food or water furnished by his employer.

[4] Whether the cases in the two lines as last above discussed may be entirely reconciled on principle, they all appear to proceed upon the theory that actual physical injury, internal or external, must be shown in a proper way before an inference legally may be drawn that the final result (in respect to which compensation is claimed) is attributable to an "injury" originating in the employment. And, as indicated, most, if not all, of the cases from other jurisdictions include that postulate. In the present case there is absent the proof of "injury" which was actually or assumedly present in the other cases.

We recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered for plaintiff in error.

CURETON, C. J. Judgments of the Court of Civil Appeals and the district court both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.