**TEXAS EMPLOYERS INS. ASS'N**

v.

**FREEMAN.**

No. 6721.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 25, 1954.

Rehearing Denied March 25, 1954.

Ramey, Calhoun, Brelsford & Hull, Vincent Ferrell, Tyler, for appellant.

Gordon R. Wellborn, Henderson, Donald Yarborough, Dallas, for appellee.

HALL, Chief Justice.

Appellee, J. W. Freeman, Jr., instituted this suit in the district court of Rusk County to set aside an award by the Industrial Accident Board and to recover total compensation for an alleged total and permanent disability suffered by him while an employee of Payne & Riggs Tubing and Swabbing Company. Trial was to a jury and resulted in a verdict for appellee, and judgment was rendered for him in the sum of $8,391.67.

Appellant presents four points, all of which are addressed to the insufficiency of the testimony to support the verdict rendered and the judgment based thereon.

Appellee, on August 7, 1951, the date of his alleged injury, was employed as a common laborer by Payne & Riggs Tubing and Swabbing Company. This company was engaged in pulling rods and swabbing a well on the Washburn lease in Rusk County. In pulling the rods out of the well appellee's hands were in contact with them and became saturated with the liquid in the well. On the date of his alleged injury appellee worked until around five o'clock, later that day at home he noticed his hands were burning and turning red. He testified that little clear yellow blisters came on them. He went to work the next morning but refused to work at the same job at which he received his alleged injury the day before on account of the liquid contained in the well, through which the tubing was pulled. He further testified that the condition of his hands steadily became worse, that seams opened in the skin which oozed blood and that eventually his fingernails came off. He testified that he went to see several doctors in an effort to cure the infection in his hands but up until the date of the trial in the court below he had not been successful. His testimony is replete with descriptions of the condition of

his hands during all the period from the time of his alleged injury until the trial in the court below. In all of this he is corroborated by his wife. Some of the liquid in the well was examined by a chemist in Shreveport and was found to contain 6.72 per cent sodium hydroxide (free lye). Several physicians testified in the case, for appellee and for appellant, some of them were corroborative of appellee's testimony while there is testimony of others favorable to appellant.

Appellant in its brief states specifically that "appellee's proof is deficient in the following particulars: (1) It does not establish accidental occurrence. (2) It does not establish harm to the physical structure of the body resulting from such accidental occurrence. (3) It does not establish a diseased condition resulting from physical harm to the structure of the body. Stated in other words, the proof is deficient because,

(1) Appellee did on the occasion in question only those things he expected to do. (2) There is no proof that his hands were burned by acidified oil. (3) There is no proof that the infectious eczematoid dermatitis that he suffers from resulted from contact with acidified oil."

 We do not agree with the above statement. On the contrary, we think that there is sufficient testimony to establish an accidental occurrence which produced harm to the physical structure of the body which resulted from said accidental occurrence and that the evidence amply establishes a diseased condition of appellee's hands resulting from physical harm to them. Furthermore, there is evidence that appellee's hands were burned by the acidified oil in the well from which he was removing the tubing. In our opinion the facts reflected that there was nothing wrong with appellee's hands when he commenced work on the day of his alleged injury, but that by the time he got home from work on that day his hands were red and burning and that on the next morning clear yellow blisters had formed to such an extent that he refused to work at his job of removing

and pulling the rods from the oil well. While it is true that appellee was the only laborer who handled the soaked rods who received burns, some of the medical testimony is that the liquid would not affect all workmen's hands in the same way. In other words, what would injure appellee's hands might not injure other persons.

Appellant contends that the condition of appellee's hands was the result of an occupational disease and not to an accident causing damage or harm to the physical structure of his body. Our Supreme Court in Guthrie v. Texas Employers Ins. Ass'n, 146 Tex. 89, 203 S.W.2d 775, 777, states: "There is no evidence that Guthrie's condition was a confining one that had accumulated over a period of time, but is traceable to definite time, place and cause." This holding fits appellee's situation here. In Barron v. Texas Employers' Ins. Ass'n, Tex.Com.App., 36 S.W.2d 464, 466, it is said: "A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause." To the same effect are Employers' Liability Assurance Corporation, Ltd., of London, England v. Flint, Tex.Civ.App., 14 S.W.2d 1046, error ref.; Federal Underwriters Exchange v. Price, Tex.Civ.App., 145 S.W. 2d 951, error dism., correct judgment; Hartford Accident & Indemnity Co. v. Jones, 5 Cir., 80 F.2d 680; Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867, error ref.; Amalgamated Sugar Co. v. Industrial Commission, 56 Utah 80, 189 P. 69; Texas Employers Ins. Ass'n v. McKay, Tex.Civ.App., 205 S.W.2d 833, affirmed by Supreme Court in 146 Tex. 569, 210 S.W. 2d 147, 150.

In the last case above by the Supreme Court the terms "accidental injury" and "occupational disease" are defined as follows: "By the term 'accidental injury', as used in this charge, is meant an undesigned, unforeseen, or unexpected occurrence or mishap, causing damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom and which can be traced to a definite time, place and cause. * * * 'An occupational disease' is defined as one which

is acquired in the usual and ordinary course of an employment and which from common experience is recognized to be incidental thereto; it is the usual and ordinary result incident to the pursuit of an occupation and must, in the nature of things, be slow and gradual in development."

The above definition of accidental injury when applied to the facts at issue herein clearly supports the jury's verdict and the judgment of the trial court rendered thereon.

Appellant cites several cases which it says supports its contention, that facts in this case did not warrant the verdict returned by the jury. We have read those decisions and it is our conclusion that they are not applicable to the facts in this case and are certainly not controlling here.

In our opinion the verdict of the jury finds ample support in the record and should be affirmed, and it is accordingly so ordered.