Ruby Lucille WEICHER, Petitioner,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Respondent.

No. B–363.

Supreme Court of Texas.

Oct. 30, 1968.

Mullinax, Wells, Mauzy, Levy & Richards, John E. Collins, Dallas, for petitioner.

Stone, Tilley, Parker, Snakard, Law & Brown, Gary Cole, Fort Worth, for respondent.

HAMILTON, Justice.

This is a workmen's compensation case. At the close of Plaintiff-Petitioner's case the trial court granted the Defendant's motion for instructed verdict and rendered judgment that Plaintiff take nothing. The court of civil appeals has affirmed. 415 S.W.2d 220.

In July 1963 Plaintiff was working as a saleswoman for Montgomery Ward & Co. in Fort Worth, Texas. She was working in the company's bargain center which was located across the street from the main store. The bargain center was not air-conditioned but was cooled by means of pedestal fans. On the date of the alleged accident, July 15, the outside temperature was between eighty four (84) and eighty nine (89) degrees. During the morning of that day plaintiff became ill and was wet with perspiration, began having chills, and was shaking violently. She was carried out of the building by her fellow employees and taken across the street in a car to the main store where she received some medication from the store nurse. On the following afternoon she saw her physician who had her admitted to the hospital the next day. The hospital records revealed that her condition was there diagnosed as heat exhaustion, and she remained in the hospital for two weeks. After her release from the hospital she was confined in bed for about two months.

On the trial of the case after all the evidence was in Respondent made a motion for instructed verdict on the grounds: first, there was no evidence that the Petitioner suffered "heat exhaustion"; second, there was no evidence that her claimed incapacity was a result of "heat exhaustion"; third, there was no evidence that the conditions of Plaintiff's employment subjected her to a greater hazard from "heat exhaustion" than ordinarily applied to the general public.

On appeal, the court of civil appeals, in considering the question of whether there was any evidence of "heat exhaustion", stated that the only evidence in the record which purported to establish the fact that Petitioner actually sustained "heat exhaustion" was through notes of the attending physician on the face of the hospital record that such was his diagnosis. That court also stated and held that in view of the state of the court record it was obliged to accept the diagnosis of "heat exhaustion" shown on the hospital records as competent evidence for prima facie proof that the claimant was suffering "heat exhaustion". Appellee makes no attack, here, on such holding by the court of civil appeals; therefore, for the purpose of this opinion we will assume that Petitioner suffered "heat exhaustion" as contended by her.

On the question of whether there was any evidence that Petitioner's claimed incapacity was the result of such "heat exhaustion", the court of civil appeals held that there was none. We agree with the Petitioner that the court of civil appeals was in error in making this holding.

■■ The hospital records show that Appellant's illness was diagnosed as "heat exhaustion" upon admittance to the hospital on July 17, 1963, and the diagnosis on the date she was released on July 31, 1963 shows to be the same. Although there was no medical evidence that "heat exhaustion" was the producing cause of Petitioner's claimed incapacity, we think an inference that her incapacity to work was the result of such "heat exhaustion" can be drawn from her fifteen (15) day hospitalization under diagnosis of "heat exhaustion." This period of time is clearly in excess of the eight (8) days incapacity requirement of Vernon's Ann.Civ.Stat., Article 8306, § 6. This alone constitutes evidence of disability for at least a given compensable period.

There remains the question of whether or not Petitioner discharged her burden of showing by competent evidence that at the time she suffered "heat exhaustion" she was engaged in the performance of duties that subjected her to a greater hazard than ordinarily applies to the general public. The court of civil appeals held that she did not meet this burden. We agree.

Petitioner predicates her claim for compensation upon disability resulting from "heat exhaustion" which was caused by heat and humidity. By her allegation she seeks to come within the exception contained in Vernon's Tex.Civ.Stat.Ann., Article 8309, § 1, which we here quote:

"The term 'injury sustained in the course of employment,' as used in this Act, shall not include:

"(1) An injury caused by an act of God, unless the employee is at the time engaged in the performance of duties that subject him to a greater hazard from an act of God responsible for the injury than ordinarily applies to the general public."

Such allegation is as follows:

"While doing her usual duties for her employer in the course and scope of her employment she sustained injuries to her person in the nature of heat exhaustion while working in a building that was not air conditioned. The plaintiff would show that since this building was not air conditioned and since it was poorly ventilated and since there were few, if any, cooling devices in the building the conditions of her employment subjected the plaintiff to a greater hazard from heat exhaustion than ordinarily applied to the general public."

It thus appears from Petitioner's allegation that she is relying solely on the condition of the premises to show that she was subjected to a greater hazard than was the general public. Her testimony also shows that she is relying only on the condition of the premises as distinguished from the nature of her work. She testified as follows:

"Q Now, on July 15th, 1963, I believe you said that you were working in the lingerie and sports department?

"A Yes, sir.

"Q In that work, you had no lifting or carrying to do, did you?

"A No.

"Q And you had nothing strenuous to do?

"A No, sir.

"Q As I understand it, the most strenuous thing you had to do was stand up?

"A That's right."

Based on this evidence the court of civil appeals made the following holding: "Therefore any physical exertion on the part of the ⸄claimant which could have played a part in her experience may be ruled out." There is no attack made here on this holding.

■ Therefore, our question is whether there is evidence that the condition of the premises where petitioner worked was such as to create a greater hazard of "heat exhaustion" to Petitioner than that to which

the general public was subjected. The burden is upon the Petitioner to establish the affirmative of this proposition. Traders and General Ins. Co. v. Ross, 263 S.W.2d 673 (Tex.Civ.App.1953, writ ref'd.).

It was held in American General Ins. Co. v. Webster, 118 S.W.2d 1082 (Tex.Civ.App. 1938, writ dism'd.), that: "The location of the place of work and the condition of the premises may constitute such extra hazard, in whole or in part," as well as, "the extra hazard may be supplied by the very nature of the work itself."

 It appears that in the cases of this jurisdiction where compensation has been allowed for "heat exhaustion" or "heat stroke" based on the location or the condition of the premises where the employee is working, there has been shown an artificial condition which intensified the heat or humidity which subjected the employee to a greater hazard of "heat exhaustion" than ordinarily applies to the general public. In the case of Hebert v. New Amsterdam Casualty Co., 1 S.W.2d 608 (Tex.Comm. App.1928), recovery was allowed based not only on the heavy work in which the employee was engaged but of the place of employment within a forest which tended to shut off the breeze, thereby *intensifying* the heat of the sun as it struck his body. In O'Pry v. Security Union Casualty Co., 1 S.W.2d 590, (Tex.Comm.App.1928), 61 A.L.R. 216, it was held that injury from heat exhaustion due to natural heat *much intensified* by conditions in a sheet iron building where employee worked was compensable under the Compensation Act. In Guthrie v. Texas Employers' Ins. Ass'n., 146 Tex. 89, 203 S.W.2d 775 (1947), the facts show, the cotton mill's weave room where employee worked was heated with steam and kept tightly closed to purposely raise the humidity to keep the dust and fuzz settled.

 It would appear, then, that Petitioner in order to recover would be required to show that the heat and humidity inside the building where Petitioner worked had been intensified by some circumstance of the condition of the premises. It takes evidence of this nature to prove that the heat and humidity inside the building is more hazardous than the natural heat and humidity outside to which the general public was subjected. As we read this record there is a total lack of evidence showing that the heat and humidity to which the Petitioner was subjected had been intensified.

There was stipulated in the record that the United States Weather Bureau showed that the temperature ranged from 84 degrees at nine o'clock to 89 degrees at twelve o'clock on July 15 in the City of Fort Worth where this establishment was located, and the wind velocity was seven to eight miles per hour. There was no evidence what the Weather Bureau showed the humidity to be that day. The building in which Petitioner worked was of masonry construction, the windows were open and the air was circulated by pedestal fans. The area in which Petitioner worked was surrounded by five feet high dress racks which cut off the breeze from the outside, but did not affect the breeze from the fans directed to this area. There is testimony showing it was very hot and humid. But this condition of heat and humidity in the building was not shown to be any greater than the heat and humidity to which the general public was subjected on the outside. There was no evidence as to what the temperature was inside the building nor was there any effort to show a comparison of the temperature inside the building with that outside to which the general public was subjected. There was evidence that the place where Petitioner worked was not air-conditioned, and that it was hotter than the main building of Montgomery Ward which was air-conditioned. This is not evidence that the natural heat and humidity in the immediate locality of this building was intensified inside. One witness testified that there were not enough fans in this building, but there was no showing that this lack of what the witness thought was enough fans was any evidence of an intensification of the

natural heat and humidity. The evidence that the five foot (5′) high dress racks would cut off the breeze from the outside is of no probative force unless it is further shown that this caused an intensification of the heat inside.

In the absence of showing of any condition or artificial circumstance connected with the premises where Petitioner worked which intensified the heat or humidity therein we hold that the Petitioner has failed to meet the burden imposed by said Article 8309, Section 1. We do wish to point out, however, that the court of civil appeals in dealing with the term "general public" as contained in the above Statute apparently considered only those persons who were customers entering the store and the employees who worked there—this we think is entirely too limited. The "general public" should include those who were subject to the natural heat and humidity in the general locality of the place where Petitioner worked.

We affirm the judgments of the courts below.

Dissenting opinion by POPE, J., in which SMITH and GREENHILL, JJ., join.

REAVLEY, J., not sitting.

POPE, Justice (dissenting).

I respectfully dissent. The majority correctly holds that the trial court's instructed verdict against Lucille Weicher may not be grounded upon a contention that she did not suffer a heat stroke. I disagree only with that part of the majority's opinion which holds that she was not subjected to a greater hazard than the general public. Both she and another co-employee testified to facts which show her exposure to a greater hazard.

Lucille Weicher testified that she suffered heat exhaustion while working in the Liquidation Center, which comprised some seven or eight bargain departments located across the street from the main retail building of Montgomery Ward. Her place of employment was a temporary location, the usual place of business being remodeled. This temporary facility had previously been used by the Container Corporation for manufacturing boxes. She described it as an old building with windows that tilted out. The outside heat on July 15, 1963 was between eighty-four and eighty-nine degrees, as stated by the majority opinion. The outside wind velocity was seven to eight knots.

In addition to those weather conditions, which affected the general public the same as Lucille Weicher, there were conditions which intensified the risk as to her in the course of her employment. She was working in the heat. It is true that she stated in answer to one question that her work required nothing more than standing. She also testified that the work required her to pick up bundles of merchandise, carry them to the counter where her register was located, and there mark down the merchandise. She was doing this when she was stricken. She testified that her department "was pretty well enclosed after you get all of the dress racks and all of the merchandise around. Some of the dress racks were about as tall as I was." She said the racks were tall enough to cut off any breeze flowing through the area. The dress racks "blocked the outside air from the windows * * *." The building was ventilated by some large pedestal fans. She testified that she and her fellow employees had asked for more fans but were advised that there were no more. When asked if the employees brought ice water to work with them, she replied, "We all had to." A fact finder could reasonably conclude from this evidence that she was confined within a hot area which was inadequately ventilated, although the general public was not.

W. S. Lile, a co-worker, who was present in the same department at the time of Mrs. Weicher's injury, also testified. He said "it was very, very hot, I know, I felt it too,

I felt it." When asked if any complaints had been lodged about the working conditions he answered "Yes, for the heat, yes, I did, we all did." He said that the temperature on July 15 was "steamy and hot and close that day." When asked about the cooling devices used in the building, he said, "I don't recall how many, but there was one or two of these large old fans in there, most of the building didn't have any at all, they were short of the big fans in the store, so we couldn't get enough to help us out." On cross-examination he was asked if there were a number of other employees on the job when Mrs. Weicher became ill. He answered, "I wouldn't say all of the regular employees, or all of the extras were there, because there were days after days that a lot of them were out sick because they'd get sick from this heat, fortunately I didn't * * *." His answer was then interrupted. Also when asked on cross-examination if he would not have preferred to work in an air-conditioned building, he replied, "I wouldn't work under that condition again. If I had to work that way again, I would retire. I wouldn't go back in it now." From this evidence a fact finder could decide that Lucille Weicher was working in a close and hot area in which there was no movement of air. It shows that her working conditions were more oppressive than conditions which operated upon members of the general public, who could move from one area to another, go outside or inside, and were not confined.

Compensation was ordered for the death of a workman by reason of heat prostration in Texas Employers' Ins. Ass'n v. Moore, 279 S.W. 516 (Tex.Civ.App.1925, no writ). The facts stated in that opinion show that the workman was engaged in more arduous work and that the heat was more intense than is the situation in this case; but among the factors held by the court to evidence a greater hazard to the workman than to the general public, was the proof that the workman "was localized in an underground basement, much hotter and more trying to work in than would have

been the natural and unrestricted atmosphere of the outside." See also Hebert v. New Amsterdam Casualty Co., 1 S.W.2d 608 (Tex.Comm.App.1928). It was said in American General Ins. Co. v. Webster, 118 S.W.2d 1082 (Tex.Civ.App.1938, writ dism.), "The location of the place of work and the condition of the premises may constitute such extra hazard, in whole or in part."

I would reverse the judgment below and remand the cause for trial.

SMITH and GREENHILL, JJ., join in this dissent.