**Melvin Lee LEWIS, Appellant,**

v.

**COMMERCIAL INSURANCE CO. OF NEWARK, NEW JERSEY, Appellee.**

No. 8093.

Court of Civil Appeals of Texas, Beaumont.

April 27, 1978.

Mark T. McDonald, Houston, for appellant.

Robert B. Dillon, Houston, for appellee.

DIES, Chief Justice.

This is a workers' compensation case wherein the carrier, Commercial Insurance Company of Newark, New Jersey, as plaintiff below, filed suit to set aside an award of the Industrial Accident Board. Defendant and cross-plaintiff, Melvin Lee Lewis, an employee of Houston Lighting & Power, alleged incapacity because of an injury occurring August 15, 1973.

Trial was to a jury which failed to find that the injury was the producing cause of any total or partial incapacity.

Judgment was given carrier from which Lewis perfects this appeal, contending these findings were against the great weight and preponderance of the evidence.

Before trial, it was stipulated Lewis was injured in the course and scope of his employment for Houston Lighting & Power Company on August 15, 1973; that carrier paid Lewis compensation for fifteen weeks and two days at $49 per week; and that the medical bills of Dr. Simon Fredericks had been paid by carrier.

On the day of the injury, Lewis was an apprentice lineman; his duties were "to perform the functions of climbing poles, connecting wires to houses, cutting aloose meters from houses and cutting down electrical wires and hooking them up."

On that day while plugging in a 480 volt meter "the meter itself exploded in my face." His face, ears, neck, and both arms were burned. He was taken by ambulance to Memorial Hospital where he was confined for one week. After that he went to Herman Hospital. It was there he was treated by Dr. Simon Fredericks. After discharge from Herman, he went home and remained there recuperating for about a month and a half.

In 1975 he was again hospitalized at Herman Hospital where Dr. Fredericks removed surgically some scar tissue.

When he returned to work at Houston Power & Lighting (October 1973) he was put to work "sweeping the docks" because his burns "was still showing and they were open." After about three weeks he went back to climbing poles until February 1976 when he was discharged.

A medical report of Dr. Simon Fredericks stated that Lewis first came under his care at Herman Hospital on August 21, 1973, when transferred from Memorial Hospital. The initial examination revealed "deep second degree burns on the face, neck, ears, and left upper extremity." Lewis was "initiated on active local wound care and treatment designed to reduce the secondary infection of his wound, and to preserve the elements of the dermis still present." He was brought to the operating room on August 23, 1973, where he was afforded the benefit of an extensive microdebridement, further designed to preserve the dermal elements." Lewis was discharged from Herman Hospital on August 31, 1973, "to be followed as an out-patient through my office." Since his discharge from Herman Hospital, "the patient was followed as an out-patient through our office. He had numerous areas of weeping and blistering

which required careful active local wound care and treatment."

On October 8, 1973, the doctor permitted Lewis to return to work "with the restriction that he could not be exposed to extreme variations of temperature, heat and cold, or exposure to the elements—wind or sun."

On November 30, 1973, "he was fitted with a special Jobst sleeve, which he was to wear at all times."

In March 1975, "Mr. Lewis was afforded the benefit of excision and revision of keloidal scars of the arm and closure of the resultant defects by advancement of local tissue. . . ."

Lewis "is left with a cosmetic embarrassment of thickening of the skin associated with burn, together with scattered areas of hyperpigmentation, and depigmentation."

In *Weicher v. Insurance Company of North America*, 434 S.W.2d 104, 106 (Tex. 1968), claimant was hospitalized for fifteen days which the court said, "This alone constitutes evidence of disability for at least a given compensable period."

In *Seeton v. Aetna Casualty and Surety Company*, 535 S.W.2d 783 (Tex.Civ.App.— Eastland 1976, no writ), the court held that a finding that claimant did not sustain any total incapacity was against the great weight and preponderance of the evidence, where the claimant was in the hospital twenty-seven days following an operation for a herniated disc.

As a general rule, the question of the extent and duration from an injury is a question for a jury. *Texas Employers' Insurance Association v. Scott*, 233 S.W.2d 171 (Tex.Civ.App.—Amarillo 1950, writ ref'd n. r. e.). However, a jury cannot ignore the undisputed facts, and the undisputed facts here show that claimant Lewis had some period of total incapacity. See *Bazzano v. Ware*, 530 S.W.2d 650 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.).

Carrier responds that if there is error, it is harmless—*Tex.R.Civ.P. 434*—because the stipulation before trial established Lewis was paid fifteen weeks of compensation. Carrier has cited us no case so holding, and we have been unable independently to find a case addressing this contention. But, we are persuaded this is not a sound proposition. The question of the extent and duration of incapacity is for the jury. *Scott*, supra. Thereafter, the carrier is given credit for any previous payments of compensation. A Court of Civil Appeals is no trier of the facts and may not exercise the fact finding power of a jury. 4 *Tex.Jur.2d* Appeal and Error § 777 at 248 (1974) and authorities there cited.

Appellant's first point is sustained. The judgment of the trial court is reversed, and the case is remanded for a new trial.

REVERSED and REMANDED.